## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIMEDX GROUP, INC. and SEAN MCCORMACK, | Civil Action No. 1:17-cv-07568 (DAB) (KHP) |
| Plaintiffs, | |
| v. | |
| SPARROW FUNDS MANAGEMENT, LP, A/K/A "AURELIUS VALUE"; VICEROY RESEARCH; JOHN FICHTHORN, BR DIALECTIC CAPITAL MANAGEMENT, LLC, and DOES 1-10, inclusive, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JOHN FICHTHORN AND BR DIALECTIC CAPITAL MANAGEMENT, LLC'S MOTION TO DISMISS THE COMPLAINT

---

BRESSLER, AMERY & ROSS
A Professional Corporation
325 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 514-1200
Attorneys for Defendants John Fichthorn and BR Dialectic Capital Management, LLC

On the Brief:

    Nikolas S. Komyati, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF ALLEGATIONS ..................................................................................... 1

ARGUMENT ..................................................................................................................... 3

    A.    MIMDEX FAILS TO STATE A CLAIM AGAINST BR DIALECTIC FOR DEFAMATION OR SLANDER ....................................... 4

        1.    BR Dialectic's Alleged Statements Constitute Protected Statements of Opinion ................................................................. 4

        2.    Mr. Fichthorn's Statements Are Protected by the Common Interest Privilege .................................................................. 8

        3.    MiMedx's Allegations Do Not Permit Any Inference of "Actual Malice" ................................................................... 9

        4.    MiMedx Has Failed to Allege Special Harm, Let Alone Special Harm Attributable to Mr. Fichthorn's Statements. ....................... 11

    B.    THE "FALSE LIGHT" TORT IS UNAVAILABLE UNDER NEW YORK LAW AND, IN ANY EVENT, NOT PLEADED BY MIMEDX ........................................................................................ 12

    C.    THE ALLEGATIONS DO NOT AMOUNT TO TORTIOUS INTERFERENCE WITH MIMDEX'S BUSINESS RELATIONS ........................................................................................ 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

### Cases

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) .................................................................................... 14

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013) ......................................................................... 7

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
   No. 08 CIV. 4772 LTS DCF, 2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013) ......................... 3

*Ass'n Servs., Inc. v. Smith*,
   249 Ga. App. 629 (2001) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 3

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) .................................................................... 3, 9

*Celle v. Filipinio Reporter Enters Inc.*,
   209 F.3d 163 (2d Cir. 2000) .................................................................................... 4

*Cox Communications v. Lowe*,
   173 Ga. App. 812 (1985) ....................................................................................... 13

*Cruz v. Latin News Impacto Newspaper*,
   216 A.D.2d 50 (N.Y. App. Div. 1995) ...................................................................... 12

*Deer Consumer Products, Inc. v. Little Group*,
   No. 650823/2011, 2012 WL 5983641 (N.Y.Sup. Ct. N.Y. Cty. Nov. 29, 2012) ................... 14

*DG & A Mgmt. Servs., LLC v. Sec. Indus. Ass'n Compliance & Legal Div.*,
   859 N.Y.S.2d 305 ( 3d Dep't 2008) ......................................................................... 12

*Dillon v. City of New York*,
   704 N.Y.S.2d 1 (1st Dep't 1999) .......................................................................... 7, 12

*Esposito-Hilder v. SFX Broad. Inc.*,
   665 N.Y.S.2d 697 (1997) ........................................................................................ 6

*Fotochrome, Inc. v. New York Herald Tribune, Inc.*,
   305 N.Y.S.2d 168 (N.Y. Sup. Ct. 1969) ...................................................................... 9

*Glantz v. Cook United, Inc.*,
    499 F. Supp. 710 (E.D.N.Y. 1979) ...........................................................................8

*Grayson v. Ressler & Ressler*,
    No. 15 CIV. 8740 (ER), 2017 WL 4180018 (S.D.N.Y. Sept. 19, 2017)......................4

*Immuno AG v. Moor-Jankowski*,
    77 N.Y.2d 235 (1991) ...................................................................................................5

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) ................................................................................................8, 9

*Mann .v Abel*,
    10 N.Y.3d 271 (2008) ...................................................................................................4

*Masson v. New Yorker Magazine*,
    501 U.S. 496 (1991) ......................................................................................................9

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013) ........................................................................15

*Monex Fin. Servs., Ltd. v. Dynamic Currency Conversion, Inc.*,
    878 N.Y.S.2d 432 (2d Dep't 2009) ............................................................................15

*Nunez v. A-T Fin. Info. Inc.*,
    957 F. Supp. 438 (S.D.N.Y. 1997) .............................................................................11

*Palin v. New York Times Co.*,
    No. 17-CV-4853 (JSR), 2017 WL 3712177 (S.D.N.Y. Aug. 29, 2017) ...................10

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) .........................................................................................3

*Sandals Resorts Int'l. Ltd. v. Google, Inc.*,
    925 N.Y.S.2d 407 (1st Dep't 2011)...............................................................................5

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
    23 Misc.3d 1231(a), 2012 WL 3569952 (N.Y. Sup. Ct. N.Y. Cty. Aug. 16,
    2012) ..............................................................................................................................6

*Simpson v. Certegy Check Servs., Inc.*,
    513 F. App'x 843 (11th Cir. 2013) .............................................................................13

*Smith v. Stewart*,
    291 Ga. App. 86 (2008) ...............................................................................................13

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ....................................................................................................5

*Thai v. Cayre Grp., Ltd.*,
    726 F. Supp. 2d 323 (S.D.N.Y. 2010) ................................................................... 11

*Torrance v. Morris Pub. Grp. LLC*,
    281 Ga. App. 563 (2006) ........................................................................................ 12

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) .............................................................. 8, 9

**Statutes**

Conn. Gen. Stat. § 52-570d(a)(1) ................................................................................. 2

**Other Authorities**

First Amendment ..................................................................................................... 9, 10

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...................................... 1, 3, 11

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants John Fichthorn and BR Dialectic Capital Management, LLC (together, "BR Dialectic") respectfully submit this memorandum of law in support of their motion for an order dismissing with prejudice the claims asserted against them by MiMedx in the complaint. *See* Dkt. 1 (the "Complaint").

## PRELIMINARY STATEMENT

BR Dialectic joins and incorporates by reference the arguments advanced by the Memorandum in Support of the Motion to Dismiss (the "Memorandum") filed by BR Dialectic's co-defendant Sparrow Fund Management LP ("Sparrow"). The legal bases for BR Dialectic's Motion to Dismiss (the "Motion") largely track those proffered by Sparrow. This memorandum offers BR Dialectic's additional arguments in support of its Motion.

MiMedx seeks to convert statements made during a private phone conversation between two sophisticated investors into a series of purportedly slanderous statements about a public company made with actual malice. That attempt fails as a matter of law because MiMedx (i) failed to adequately plead that the statements were offered as factual accounts, not opinions; (ii) failed to plead any facts that support an inference that Mr. Fichthorn made statements with "actual malice" against MiMedx; and (iii) failed to plead any harm to MiMedx proximately caused by the alleged statements. Further, MiMedx's allegations are plainly inadequate to support its conclusory statements that BR Dialectic somehow placed MiMedx in a "false light" or interfered with its business relations. The Complaint fails to state a claim on which relief can be granted as to BR Dialectic, and should therefore be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS

The Complaint against BR Dialectic is limited to allegations made by MiMedx Group, Inc. ("MiMedx" or the "Company"); Sean McCormack makes no allegations against BR

Dialectic.  MiMedx alleges that Mr. Fichthorn, the general partner of investment adviser BR

Dialectic, met with MiMedx officials to discuss the Company's business practices on August 8,

2017 and August 11, 2017.  Compl. ¶ 23.  Following those meetings, MiMedx alleges that on

September 15, 2017, Mr. Fichthorn called a "major"—but unnamed—MiMedx shareholder and

purportedly shared his negative views about the Company's prospects and business methods.  *Id.*

¶ 24.  MiMedx goes on to allege that—at an undisclosed future date—this shareholder sold

approximately one million of its shares.  *Id.* ¶ 34.  Without any substantiation, MiMedx simply

asserts that the shareholder's purported transaction was "a direct result" of the alleged phone

call.  *Id.*

MiMedx offers only bits and pieces of the alleged conversation, paraphrasing freely and

selectively quoting without any context or foundational facts related to Mr. Fichthorn or

otherwise.  *See generally* Compl.  ¶¶ 24-32.  While statements by Mr. Fichthorn appear in

quotes, it remains unclear whether the purported statements are being proffered as verbatim

quotations from a transcript, or as paraphrased approximations of what was said during this

alleged phone call, or whether they can be attributed to Mr. Fichthorn at all.[1]

The statements that provoke the most ire of MiMedx are similar to those found in a blog

post posted by Aurelius Value ("Aurelius")—which MiMedx misattributes to Sparrow, as

summarized in Sparrow's Memorandum.  MiMedx alleges, in broad strokes, that Mr. Fichthorn

and the unnamed shareholder purportedly discussed the serious allegations of wrongdoing by

MiMedx that were circulating in the marketplace at the time of the alleged phone call.  That BR

Dialectic's alleged statements overlap with Aurelius's is unsurprising, as both BR Dialectic and

Aurelius were drawing on widely disseminated publicly available reports and legal filings about

---

[1] The unexplained source of these quotations raises a serious question as to the legality of Plaintiffs' procurement of these statements.  It is illegal, for example, to record telephone calls in Connecticut, where BR Dialectic is located, without obtaining the "consent of all parties to the communication."  Conn. Gen. Stat. § 52-570d(a)(1).

the Company's improper business practices.   In the case of Mr. Fichthorn, he was further exposed to such information about MiMedx's (publicly known) business issues from his conversations with representatives from the Company the previous month.   *See id.* ¶ 23.   Of course, it is not illegal—and certainly not defamatory—for one investor to pass along information that is publicly available in the marketplace to another investor.

## ARGUMENT

Under Rule 12(b)(6), a motion to dismiss must be granted where a cause of action fails "to state a claim [for] relief that is plausible on its face." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 546 (citations omitted).   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, No. 08 CIV. 4772 LTS DCF, 2013 WL 1787567, at *3 (S.D.N.Y. Apr. 26, 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "[T]here is 'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.* 85 N.Y.2d 373, 379 (1995). Because MiMedx fails to plead sufficient allegations to support any of its claims, the Complaint should be dismissed in its entirety with prejudice.

This memorandum incorporates by reference the legal standards articulated in Sparrow's Memorandum, and writes separately to elaborate on the application of those standards with respect to the claims MiMedx alleges against BR Dialectic.

### A.   MIMDEX FAILS TO STATE A CLAIM AGAINST BR DIALECTIC FOR DEFAMATION OR SLANDER

MiMedx fails to state a claim for slander or defamation (Counts Three and Four) against BR Dialectic for several independently dispositive reasons.   First, Mr. Fichthorn's alleged statements are protected statements of pure opinion and are nonactionable as a matter of law. Second, even if the statements were treated as factual (they should not be), they are protected under the common-interest privilege.   Third, MiMedx fails to allege any non-conclusory facts sufficient to support an inference of actual malice.   Finally, MiMedx fails to allege any facts that permit a plausible inference that Mr. Fichthorn's statements caused any harm to MiMedx. Failure to plead any one of these elements dooms MiMedx's defamation and slander claims against BR Dialectic, and the Court should therefore dismiss them with prejudice.

### 1.   BR Dialectic's Alleged Statements Constitute Protected Statements of Opinion

MiMedx's defamation and slander claims against BR Dialectic fall flat because MiMedx does not allege that Mr. Fichthorn made a defamatory statement of fact.   The New York and United States Constitutions provide statements of opinion with "absolute" protection and shield speakers from liability.   *See Celle v. Filipinio Reporter Enters Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) (statements of opinion are entitled to "absolute" protection); *Mann .v Abel*, 10 N.Y.3d 271, 276 (2008) (same).   Simply put, statements of opinion cannot be defamatory.   *Grayson v. Ressler & Ressler*, No. 15 CIV. 8740 (ER), 2017 WL 4180018, at *8 (S.D.N.Y. Sept. 19, 2017).   As set forth in Sparrow's Memorandum, whether a particular statement expresses fact or opinion is a question of law for the court and "must be answered on the basis of what the average person

4

hearing or reading the communication would take it to mean." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).

In assessing an allegedly defamatory statement, courts look to "the content of the whole communication, its tone and apparent purpose," rather than isolating the individual alleged defamatory statements. *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991); *see also Sandals Resorts Int'l. Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414 (1st Dep't 2011) ("Sifting through a communication for the purpose of isolating and identifying assertions of fact should not be the central inquiry."). "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole." *Steinhilber*, 68 N.Y.2d at 294.

Here, MiMedx invites the Court to disregard this well-established precedent and examine selective—almost entirely context-free—quotations purportedly pulled from a private phone call between two sophisticated investors. MiMedx offers no further explanation. Indeed, MiMedx does not allege whether the purported statements are being proffered as verbatim quotations, or as paraphrased approximations of what was said during this alleged phone call, or whether they even can be plausibly attributed to Mr. Fichthorn. *See, e.g.*, Compl. ¶¶ 26, 30, 31. Such cherry-picked, isolated statements are legally insufficient to support a defamation claim. *See Immuno*, 77 N.Y.2d at 255 ("Isolating challenged speech and first extracting its express and implied factual statements, without knowing the full context in which they were uttered, indeed may result in identifying many more implied factual assertions than would a reasonable person encountering that expression in context.").

5

Further, the scant context that is provided by MiMedx only serves to demonstrate that Mr. Fichthorn (to the extent he made any of the purported statements) was providing his opinions—informed by publicly available reports about MiMedx's business practices and Mr. Fichthorn's August 2017 conversations with the Company's representatives—to another sophisticated, interested investor.  In MiMedx's own words, "[t]he theme of Fichthorn's talking points to MiMedx's shareholder in the September Call was that the company was engaged in fraudulent channel stuffing, **as per the false allegations leveled by MiMedx's former employees [in their lawsuit against the Company]** . . . ."  Compl. ¶ 25 (emphasis supplied); *see also id.* ¶¶ 5-6.

Whether or not the allegations in the former employees' lawsuit are "false," Mr. Fichthorn's discussing a public lawsuit regarding a publicly-traded company is protected and valuable speech.  *See Esposito-Hilder v. SFX Broad. Inc.*, 665 N.Y.S.2d 697, 701 (1997) ("[T]he most jealously protected speech is that which advances the free, uninhibited flow of ideas and opinions on matters of public interest and concern".).  Indeed, a discussion of the possible outcomes of the public lawsuit would be of great interest to a "major" shareholder, who presumably stood to lose millions of dollars should MiMedx's stock price respond negatively to public reports about the lawsuit.  *See* Compl. ¶ 8 (alleging that the unnamed "major" shareholder owned at least 1 million shares of MiMedx prior to the call).  Further, as MiMedx acknowledges, BR Dialectic is a known short-seller, and a "major" shareholder would be aware that BR Dialectic stood to realize gains in the event of a MiMedx price drop.  *Silvercorp Metals Inc. v. Anthion Mgmt. LLC, 23 Misc.3d 1231(a), 2012 WL 3569952, at *9 (N.Y. Sup. Ct. N.Y. Cty. Aug. 16, 2012)* (observing that knowledge of an author's short position in a company suggested to the reader that the author was expressing opinions about that company).  Within this context, any

reasonable person (let alone a sophisticated investor holding 1 million shares of a public company) would understand Mr. Fichthorn's purported statements to express (protected) opinions about the lawsuit and MiMedx's business, not assertions of fact.[2]

Even stripped of this context, MiMedx's allegations fail to plausibly demonstrate that Mr. Fichthorn made any statements of fact. For example, MiMedx focuses on Mr. Fichthorn's alleged statements regarding the possibility of criminal liability. MiMedx alleges that "Fichthorn represented to the shareholder with no hesitation that 'this is definitely a revenue fraud situation,' that the practices he described 'could be a jailable offense for the CEO,' and that 'this situation will end up with some MiMedx employees being dragged away in handcuffs.'" Compl. ¶ 25. Such isolated statements are exactly the type of "loose, figurative or hyperbolic statements, [that], even if deprecating the plaintiff, are not actionable." *Dillon v. City of New York,* 704 N.Y.S.2d 1, 5 (1st Dep't 1999); *see also Jacobus v. Trump*, N.Y.S.3d 330, 336 (N.Y. Sup. Ct. January 9, 2017); *Adelson v. Harris*, 973 F. Supp. 2d 467, 487-88 (S.D.N.Y. 2013). Any reasonable person listening to such hyperbolic language would realize that Mr. Fichthorn had no way of predicting future events (such as the hypothetical arrests of MiMedx employees), and that Mr. Fichthorn's alleged language (this "***could*** be a jailable offense") expressed conditional possibility, not factual certainty.

In light of black letter law and the context of the alleged phone call between Mr. Fichthorn and a "major" shareholder, MiMedx's allegations simply don't hold up. Any reasonable listener would understand Mr. Fichthorn's statements to constitute his opinions—not

---

[2] Many of the alleged statements do not appear to be capable of a defamatory meaning, even if taken to be factual. The allegations regarding whether MiMedx has a relationship with a company known as "Fuse," the location of "Fuse's" headquarters according to Google Maps, and how many business cards "Bill McLaughlin" has, *see* Compl. ¶ 31, are difficult to logically parse, let alone assess as defamatory.

assertions of fact—and thus MiMedx's defamation and slander claims should be dismissed with prejudice.

2.      **Mr. Fichthorn's Statements Are Protected by the Common Interest Privilege**

Even if Mr. Fichthorn's alleged statements were not protected opinion (which they are), they are squarely protected by New York's qualified common-interest privilege, which extends to "communication[s] made by one person to another upon a subject in which both have an interest." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) (quotation marks and citation omitted).  A "business relationship" constitutes a common interest for purposes of this privilege. *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 436 (E.D.N.Y. 2013).  The privilege extends to communications between parties who share "an interest in a corporation or other institution [and] have made arguably libelous statements in the course of communicating with other interested parties on the subject of the institution's management."  *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 716 (E.D.N.Y. 1979).

This well-established privilege eviscerates MiMedx's claims against BR Dialectic.  The alleged communications at issue—all statements about the Company and its management—are precisely the kinds of statements protected by the common-interest privilege.  Mr. Fichthorn and the shareholder share a common interest in MiMedx's commercial fortunes; they should not be subjected to legal action for communicating about information that was already in the public sphere about a public company.  *See Yong Ki Hong*, 951 F. Supp. 2d at 437 (noting that "[t]he qualified privilege requires that the communicants share a *common, mutual,* or *corresponding* interest, not an *identical* interest" (emphasis in original)).  And it is not relevant that Mr. Fichthorn, a short seller, and the unnamed shareholder may have possessed different interests in the trajectory of MiMedx's stock value; indeed, because the  "privilege exists to foster *debate,*

and to permit parties to *defend* their positions, the privilege must *a fortiori* be all the more applicable when the communicating parties' interests are *opposed." Id.* (emphasis in original). The common interest privilege exists to insulate these types of conversations from becoming the grist of a defamation action. "[S]o long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman*, 80 N.Y.2d at 437. Here, even if Mr. Fichthron did make the statements, he did not "abuse" the privilege by merely sharing his opinions with another sophisticated investor. MiMedx's claim against BR Dialectic should be dismissed outright.

### 3.    MiMedx's Allegations Do Not Permit Any Inference of "Actual Malice"

As explained in Sparrow's Memorandum, MiMedx is a "public figure" for First Amendment purposes, and must therefore plead that a defendant made statements with "actual malice" to state a viable defamation claim. A party acts with actual malice by knowingly or recklessly making false statements to third parties. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1991). At the motion to dismiss stage, "where a particular state of mind is a necessary element of a claim, defendant's pleading of that state of mind must be plausible and supported by factual allegations." *Biro*, 963 F. Supp. 2d at 279 (citing *Iqbal*, 556 U.S. at 686–87).

MiMedx has not advanced *any* factual allegations that suggest Mr. Fichthorn was reckless with the truth. Critically, MiMedx's allegations that Mr. Fichthorn made the statements with his own economic interest in mind are not, without more, sufficient to plead actual malice. *See Fotochrome, Inc. v. New York Herald Tribune, Inc.*, 305 N.Y.S.2d 168, 173 (N.Y. Sup. Ct. 1969) (holding that an affidavit stating the publisher of an article regarding a company had a large short position in that company's stock was not by itself sufficient to show actual malice).

And MiMedx's bald assertions as to Mr. Fichthorn's purported knowledge of falsity do nothing to advance its case. For example, MiMedx alleges that Mr. Fichthorn made false or otherwise "misleading statements" about MiMedx's business practices because he purportedly was "aware of MiMedx's consignment sale model." Compl. ¶ 27. This *ipse dixit* pleading falls well short of adequately alleging Mr. Fichthorn's mental state as to the truth or falsity of the statements he made on a private phone call with an unnamed shareholder. Indeed, the allegations demonstrate that Mr. Fichthorn provided ample support for his opinions about the Company—even drawing on knowledge *that he learned from the Company itself* during the August 2017 meetings—and only bolster the soundness of his opinions and eliminate any inference that he was speaking with knowledge that his purported statements were false.

Nor does Mr. Fichthorn's alleged omission of certain facts demonstrate any malice, let alone the actual malice necessary to support a claim of defamation. MiMedx alleges that Mr. Fichthorn shared inferences drawn from certain facts and sources, but ignored other facts that MiMedx believes to be more favorable to the Company. *See, e.g.*, Compl. ¶ 30. But Mr. Fichthorn has no freestanding duty of neutrality in his assessment of MiMedx to avoid liability for defamation; he can choose what sources he deems to be more reliable than others. *See Palin v. New York Times Co.*, No. 17-CV-4853 (JSR), 2017 WL 3712177, at *8 (S.D.N.Y. Aug. 29, 2017) (citing *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) ("Defamation judgments do not exist to police [a speaker's] objectivity; the First Amendment presupposes that a veritable medley of opposing voices is better suited to the search for truth.")).

MiMedx is required to plead facts supporting a plausible inference that Mr. Fichthorn acted with "actual malice" in making the alleged statements; its failure to do so defeats the Complaint.

4.     **MiMedx Has Failed to Allege Special Harm, Let Alone Special Harm Attributable to Mr. Fichthorn's Statements.**

Finally, MiMedx's slander claim dies another death because MiMedx does not make a single allegation that Mr. Fichthorn's alleged statements caused it to suffer any measurable damages. As set forth in Sparrow's Memorandum, MiMedx's Complaint is premised on a theory that Defendants engaged in a "short and distort" conspiracy to manipulate MiMedx's stock price. *See* Compl. ¶¶ 1, 77. MiMedx, however, does not actually allege, as it is required to, that it suffered "the loss of something having economic or pecuniary value" as a result of Mr. Fichthorn's purported statements.[3] *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (quotation marks and citation omitted).

Indeed, the only "harm" that MiMedx appears to allege is that a single unknown shareholder purportedly sold a large volume of stock for an unknown price at an unknown time. Compl. ¶ 34. Such vague assertions cannot withstand Rule 12(b)(6)'s pleading requirements. *See Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) ("To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses."). "Round figures or a general allegation of a dollar amount will not suffice" and dismissal is proper where a plaintiff fails "to allege special damages with the requisite degree of specificity." *Cayre Grp., Ltd.*, 726 F. at 330. Here, MiMedx can barely even muster such general allegations. In fact, aside from a vague assertion in its jurisdictional statement that MiMedx's falling stock price resulted in "hundreds of millions of dollars of lost value to the company and shareholders,"

---

[3] Nor does MiMedx make any attempt to allege that Mr. Fichthorn's purported statements influenced trading in MiMedx's stock or caused the Company's stock price to decrease (which they could not). *See Cayre Grp., Ltd.*, 726 F. at 330 (economic or pecuniary loss "must flow directly from the injury to reputation cause by the defamation"). For the same reasons explained in Sparrow's Memorandum, even if this theory could be attributed MiMedx's allegations, it is hopelessly conclusory and mired in questions of causation, as there are no allegations even amounting to a plausible causation argument that accounts for considerable market noise during the relevant period. These gross shortcomings require dismissal of the claim.

11

Compl. ¶ 21—which is precisely the type of "general allegation" deemed insufficient by New York law—the Complaint is devoid of any reference to specific economic losses.[4]

## B.   THE "FALSE LIGHT" TORT IS UNAVAILABLE UNDER NEW YORK LAW AND, IN ANY EVENT, NOT PLEADED BY MIMEDX

As Sparrow demonstrates in its Memorandum, MiMedx's "false light" claim (Count Six) finds no support in New York law, which, as Plaintiffs acknowledge, governs this dispute.  Pls.' Mot. for Expedited Discovery, Dkt. 15, at 9 (relying on only New York law in stating defamation legal standard); Pls.' Reply Mem. in Support of Mot. for Expedited Discovery, Dkt. 26, at 6, 8, 10 (relying on New York law).  Because New York does not recognize a "false light" tort, this claim should be dismissed with prejudice.  *See Cruz v. Latin News Impacto Newspaper*, 216 A.D.2d 50, 51 (N.Y. App. Div. 1995).

Equally unavailing are Plaintiffs' self-serving assertions that Georgia law—which does not govern the dispute but conveniently recognizes the "false light" tort—applies to this claim. But, even applying Georgia law to MiMedx's false light claim, the claim would still fail.

To sustain a claim for false light invasion of privacy, a plaintiff must show "the existence of false publicity that depicts [it] as something or someone which [it] is not [and] must demonstrate that the false light in which she was placed would be highly offensive to a reasonable person."  *Torrance v. Morris Pub. Grp. LLC*, 281 Ga. App. 563, 572 (2006) (quotation marks and citation omitted).  MiMedx has not met its burden.  First, its allegations fail to explain how Mr. Fichthorn's purported statements to a single shareholder during a private phone call amount to "publicity."  *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 637 (2001)

---

[4] MiMedx has also failed to plead that Mr. Fichthorn's alleged statements constitute slander or defamation *per se*. This narrow doctrine applied by some New York courts cannot rescue the Complaint from dismissal. *See DG & A Mgmt. Servs., LLC v. Sec. Indus. Ass'n Compliance & Legal Div.*, 859 N.Y.S.2d 305, 307 ( 3d Dep't 2008) (statements that are "merely reflective of [a defendant's] unfavorable opinion" do not amount to slander *per se*); *see also Dillon*, 704 N.Y.S.2d at 5.

(element of publicity not established where no evidence that members of public viewed video tape that formed basis of false light claim).  Second, given the rough-and-tumble market of investor analysis about public companies on the Internet, it is not credible that a reasonable person (let alone a sophisticated investor) would find Mr. Fichthorn's alleged statements about MiMedx's business practices "highly offensive."  *See Simpson v. Certegy Check Servs., Inc.*, 513 F. App'x 843, 845 (11th Cir. 2013) ("A hypersensitive person is not entitled to extra protection.").

In any event, as explained in Sparrow's Memorandum, MiMedx has no right of privacy—and therefore cannot recover—because the alleged incident "is a matter of public interest, or the subject matter of a public investigation."  *Cox Communications v. Lowe*, 173 Ga. App. 812, 813 (1985).  MiMedx is a large public company that is the subject of a constant barrage of investor analysis, both positive and negative, and it has affirmatively injected itself into this public melee by releasing its own press releases commenting on the public reports.  MiMedx's assertions that its privacy was somehow invaded when Mr. Fichthorn allegedly made statements to a single shareholder during a private phone call strain credulity, let alone suffice to plausibly state a claim.

Finally, MiMedx's claim for false light invasion of privacy is duplicative of its defamation claims, and therefore fails as a matter of law.  *Smith v. Stewart*, 291 Ga. App. 86, 100 (2008) ("[T]o survive as a separate cause of action, a false light claim must allege a nondefamatory statement," since "[i]f the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy.").  MiMedx once again comes up short; it does not identify a single statement that is "nondefamatory," never mind one that at the same time casts MiMedx in an unfair light.  Accordingly, MiMedx's claim must be dismissed.

13

### C.   THE ALLEGATIONS DO NOT AMOUNT TO TORTIOUS INTERFERENCE WITH MIMDEX'S BUSINESS RELATIONS

For the same reasons articulated in the Sparrow Memorandum, MiMedx's bare-bones allegations that "prior to Defendants' conduct, MiMedx enjoyed a profitable business relationship with third parties, including customers, investors, and creditors," and that Defendants' alleged publications "caused these third parties, to end their business relationship with MiMedx or fail to enter into anticipated business relationships with MiMedx, which proximately damaged MiMedx" cannot sustain MiMedx's claim for tortious interference with business relations (Count Seven).   Compl. ¶¶ 114, 117.   Similarly, MiMedx's allegation that a single MiMedx shareholder sold one million of its shares as a result of a single purported conversation with Mr. Fichthorn does not suffice to state a tortious interference claim.  *Id.* ¶ 34.

Aside from reference to this single shareholder, the Complaint is devoid of any allegations identifying would-be or aggrieved business partners, nor are there any allegations demonstrating that Mr. Fichthorn's alleged statements interfered with MiMedx's relationships with these unidentified third parties.  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (noting that "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship.").   Moreover, with no specific relationships to point to, MiMedx fails to plead injury.

Nor does MiMedx's allegation about the single shareholder suffice to establish the requisite elements of the claim.   "General allegations of interference with relationships with stockholders, investors, and financiers, and the absence of any allegation of a specific relationship, are fatal to the tortious interference with business relations claim." *Deer Consumer*

14

*Products, Inc. v. Little Group*, No. 650823/2011, 2012 WL 5983641, at *3 (N.Y.Sup. Ct. N.Y. Cty. Nov. 29, 2012).  MiMedx pleads nothing that even comes close to demonstrating that this relationship differed from those between Plaintiffs and other shareholders, all of whom are free to buy and sell stock at any time.   MiMedx thus fails to plausibly allege the existence of a specific business relationship or expectancy with the unnamed shareholder that would sustain a claim for tortious interference with business relations.

Moreover, even taking all of MiMedx's's allegations as true, there is no plausible suggestion that Mr. Fichthorn's alleged statements of opinion "amount to a crime or an independent tort," or that Mr. Fichthorn otherwise made the alleged statements "for the sole purpose of inflicting intentional harm on the plaintiffs." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013).   MiMedx cannot sustain a claim for tortious interference with prospective business relations unless it demonstrates that "that [the] defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations." *Monex Fin. Servs., Ltd. v. Dynamic Currency Conversion, Inc.*, 878 N.Y.S.2d 432, 433 (2d Dep't 2009).   MiMedx has failed entirely in this regard.  Accordingly, MiMedx's claim for tortious interference with business relations fails as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice as to the claims asserted against John Fichthorn and BR Dialectic Capital Management, LLC.

Dated: October 26, 2017               <u>/s/ Nikolas S. Komyati, Esq.</u>
       New York, New York         Nikolas S. Komyati (NK-8873)
                                      Bressler, Amery & Ross, P.C.
                                        A Professional Corporation
                                        325 Columbia Turnpike
                                        Florham Park, New Jersey 07932
                                        nkomyati@bressler.com
                                        Telephone: (973) 514-2000

                                        *Attorneys for Defendants John Fichthorn and BR Dialectic Capital Management, LLC*